**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| Joseph Gil | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No._____ |
| | ) | |
| Anna Gil; Louise Makuch | ) | |
| Revocable Trust; | ) | |
| Anna Gil, Trustee of the Louise Makuch | ) | |
| Revocable Trust; Gilmart, Ltd.; | ) | |
| Gilmart II, Inc.;  Josef Jamroz; | ) | |
| Father Waclaw Jamroz; | ) | |
| Byrne, Byrne & Company; | ) | |
| Lowell International Company; | ) | |
| Eagle Distributors, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, Joseph Gil (hereinafter "Plaintiff" or "Joe"), by and through

his attorneys, SPRINGER, BROWN, COVEY, GAERTNER & DAVIS, LLC, and in

complaining of Defendants Anna Gil, The Louise Makuch Revocable Trust, Gilmart, Ltd.,

Gilmart II, Inc., Josef Jamroz, Father Waclaw Jamroz, Byrne, Byrne, & Company, Lowell

International Company, and Eagle Distributors, Inc., states as follows:

### Introduction

This case involves a scheme to defraud Plaintiff Joe Gil of monies owed to him by Anna

Gil (hereinafter "Anna"), his ex-wife and 50% shareholder of Gilmart, Ltd (hereinafter

"Gilmart"). These monies were owed by Anna to Plaintiff pursuant to Plaintiff's position as 50%

owner of Gilmart, as well as Plaintiff's rights to receive certain marital property. As a result of

the scheme, Plaintiff has lost millions of dollars in compensation as officer of Gilmart, amounts owed to him as part of his divorce, as well as attorney's fees and costs.

Anna and Joseph Gil were married and started an ethnic grocery store known as Gilmart, Ltd., located in the south suburbs of Chicago near Midway Airport. During the entire operation of Gilmart, Anna's duty was to run the bookkeeping and bill paying function, and Joe Gil's responsibility was to conduct operations on the floor of the store including ordering, stocking, and staffing the grocery operation. Upon information and belief, the scheme began in the late 1990's, several years before Anna filed for divorce against Plaintiff. Through Anna's position as bookkeeper, Anna began taking excess compensation from Gilmart, much of which has never been accounted for. The total compensation she received for the years 2002-2005 totaled $2,304,369. However, upon information and belief, she has tried to cover up additional compensation she took through an attempt in 2002 to re-characterize the asset designated on Gilmart's 2001 tax return as "cash" in the amount of $3,782,471, as a "shareholder loan" to Anna Gil and Joseph Gil of $2,523,038. Plaintiff never received any of this money, but since he was a shareholder of Gilmart he was still required by the IRS to pay personal taxes on this amount, as it was found to be a dividend by the IRS after an audit was conducted. In addition, Anna used Gilmart funds to pay her personal tax obligation in 2005 in the amount of $350,000, paid personal attorneys fees incurred from her divorce from the corporate account, and took "loans" totaling $103,870 from Gilmart. In essence, Anna Gil used Gilmart as her personal piggy bank for years without the knowledge of Plaintiff, yet Plaintiff was the one who had to pay.

Then in 2004, Anna transferred certain of her assets and Gilmart's assets into the Louise Makuch Revocable Trust (the "Trust"), allegedly formed by her mother with the explicit purpose of keeping those assets out of the reach of Plaintiff. Property was also transferred into the names

of other parties, including Defendant Jozef Jamroz, who then transferred the property back to the Trust. The Trust, which Anna has asserted that she forged her mother's signature onto, was the eventual transferee of most the assets owned by Anna between May 27, 2004 and now. When Anna's mother, Louise Makuch (hereinafter "Louise") allegedly established the trust, Anna was one of the beneficiaries and became the recipient of the transfers to the Trust as the beneficiary of the Trust upon Louise's death in August of 2006, and continues as the recipient of the income from those assets to this day. All of these transfers into the Trust took place shortly before the filing of the divorce petition for the purpose of defrauding Plaintiff. When Louise passed away in August of 2006, Steven D. Gustafson became Successor Trustee pursuant to the terms of the Trust. Upon information and belief, Anna Gil is now Trustee of the Trust.

In November of 2004, Anna filed a Petition for the Dissolution of Marriage between her and Plaintiff. Shortly after the commencement of the divorce litigation, the divorce court ordered Gilmart to pay Plaintiff $2,000.00 per week. In addition, the divorce court ordered Gilmart to "pay all taxes, penalties and interest resulting from the amendment of Anna and Joe Gil's personal tax returns relating to the profit of Gilmart and the parties for the tax years 2001, 2002 and 2003." Those taxes were paid in recognition of the liability that had been incurred from the re-characterization of moneys taken out of Gilmart in cash, but not received by Plaintiff, and put on the 2002 Gilmart tax returns as a shareholder loan.

On January 27, 2006, Anna Gil authorized Gilmart to file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. To support this, Anna Gil produced minutes of a special meeting of the board of directors of Gilmart held on January 20, 2006 which allegedly occurred. At that meeting, Anna alleged that a resolution was passed which made the following decisions: (1) it is in the best interests of Gilmart to file a Chapter 11 voluntary petition; (2) Anna

Gil is authorized and directed to execute and deliver all documents necessary to file bankruptcy for Gilmart; (3) Anna Gil is authorized and directed to perform all acts necessary for the bankruptcy, including to make appearances and representations on behalf of Gilmart to the Bankruptcy Court.  When attorneys for Joe Gil challenged the authority of Anna Gil to file a bankruptcy case without the permission of Joe Gil as the other 50% shareholder of Gilmart, Anna produced minutes as evidence that in August of 2005, Anna had allegedly sent notice to Plaintiff and herself of the following meetings: (1) Notice of a Special Meeting of the Board of Directors on August 25, 2005; (2) Notice of Annual Meeting of the Board of Director's on August 26, 2005; and (3) Notice of Annual Meeting of the Shareholders on August 26, 2005. Plaintiff never received notice for these three meetings. Anna alleged that, at these meetings, Gilmart's bylaws were materially altered in two ways: (1) a reduction in the number of directors from two to one; and (2) a change in the quorum requirement for shareholder meetings from a majority to "majority of shareholders present." According to the meeting minutes, Plaintiff was also relieved of his duties as Director of Gilmart.

As a result of Anna Gil's allegations that she had the authority to file the Chapter 11 case as a result of the August 2005 Gilmart corporate meeting,  Plaintiff filed two separate Motions to Dismiss; one based upon the lack of Gilmart's authority to file for Chapter 11 given that Plaintiff was never given notice of the Board of Director's meeting authorizing Gilmart to file Chapter 11, and the other based upon Anna's actions since the filing of the bankruptcy petition that included gross mismanagement of the bankruptcy estate, failure to abide by filing requirements, and a continued failure to pay domestic support and tax obligations to Joseph Gil. Both motions to dismiss were granted by the bankruptcy court. Plaintiff then filed a Motion for Sanctions under Rule 9011, arguing that the filing of the Chapter 11 case was not based upon a reasonable

investigation of the facts of the case and that the Chapter 11 was filed for the improper purpose

of harming Plaintiff Joseph Gil. This Motion was also granted by the bankruptcy court and

monetary sanctions in the amount of $65,000 were awarded against Anna Gil personally as a

result of her failure to conduct a reasonable inquiry into the Debtors ability to file a Chapter 11

case.

On September 20, 2006, less than four months after the voluntary Chapter 11 was

dismissed, an involuntary Chapter 7 bankruptcy petition was filed by three of Gilmart's

creditors; Defendants Byrne, Byrne & Company, Lowell International Company, and Eagle

Distributors, Inc. Upon information and belief, Anna engaged in negotiations with the three

petitioning creditors for preferential treatment over other Gilmart creditors if they would join in

an involuntary petition. One of the three creditors listed in the original involuntary petition,

Eagle Distributors, Inc., was not even listed as a creditor on Gilmart's schedules filed in the case.

Additionally, upon information and belief, the owners and managers of the three petitioning

creditors of Gilmart's bankruptcy had a long-standing relationship with Anna. Only two weeks

after the Chapter 7 was filed, Gilmart's attorneys filed a Motion to Convert the proceeding to a

Chapter 11 reorganization. The Motion to Convert was granted by the bankruptcy court.

In the Chapter 11 case, Plaintiff filed a motion to appoint a trustee alleging that Anna Gil

engaged in gross mismanagement of the affairs of the Debtor by transferring assets of the estate

to herself and to those related to her without consideration, by paying for her personal expenses

with corporate funds, by representing to her creditors and to Joe Gil, an equity security holder,

that expenses had been incurred when in fact they had not, and for enriching herself to the

detriment of the Debtors creditors and to her fellow equity security holder. Alex Moglia was

appointed trustee and sold substantially all of Gilmart's assets in an Asset Purchase Agreement

pursuant to 11 U.S.C. § 363 to the Louise Makuch Revocable Trust. A new corporation called Gilmart II was formed of which the Trust was the sole owner. Upon information and belief, the funds used by the trust to purchase Gilmart were funds transferred by Anna and the other Defendants to the Trust with the explicit purpose of keeping the funds out of the reach of Plaintiff. The net effect of the sale was that Anna took over Plaintiff's interest in Gilmart without Plaintiff receiving adequate compensation for that interest. Upon information and belief, Anna had directed the transfer of her assets into the trust so the Trust, with Anna and her brother as beneficiaries, could buy back Gilmart.

Anna had succeeded in her overall goal at this point. She had managed to take away Plaintiff's 50% share of Gilmart without paying him anything remotely close to what he was entitled to. This was the whole purpose of the transfers of assets into the Trust, as well as the filing of the first Gilmart bankruptcy, and the manufacturing of the second involuntary bankruptcy. Unfortunately for Anna, her greed eventually caught up with her. In the fall of 2007, she filed suit against Steven Gustafson as Successor Trustee accusing him of breach of fiduciary duty and asking for his removal as Successor Trustee. Upon information and belief, this suit was in reality simply an attempt to avoid paying fees for services Gustafson had rendered as Successor Trustee. During the discovery in this proceeding, much of the information relating to Anna's scheme was revealed, including the other Defendant's involvement in the scheme.

## I. Jurisdiction

1.        This Court has jurisdiction over this proceeding pursuant to 18 U.S.C. § 1961, *et seq.* in that this cause of action arises under the Racketeer Influenced Corrupt Organizations Act ("RICO").

2.          Venue is proper in this Court Pursuant to 28 U. S. C. §§ 1408 and 1401. All actions set forth in the complaint occurred in the Northern District of Illinois.


## II.  FACTS RELEVANT TO ALL CAUSES OF ACTION

### A.      Introduction of Defendants

3.          Defendant Anna Gil is the former spouse of plaintiff and 50% shareholder of Defendant Gilmart, Ltd. Anna Gil's duty at Gilmart was to run the bookkeeping and bill paying function. Through this position, she was able to transfer vast sums of money from Gilmart accounts to her personal accounts, third parties and to the Louise Makuch Revocable Trust. Upon information and belief, Anna is currently Trustee of the Louise Makuch Revocable Trust.

4.          Defendant Gilmart, Ltd. is a corporation owned jointly by Plaintiff and Defendant Anna Gil, which Anna used to take excess compensation, pay for her personal expenses, and take money from and direct to the Louise Makuch Revocable Trust. All of Gilmart's assets were purchased during Gilmart's second Chapter 11 bankruptcy proceeding by the Louise Makuch Revocable Trust. A new corporation called Gilmart II, Inc. was formed of which the Trust is the sole owner. Gilmart II, Inc. is also a named Defendant.

5.          Defendant Louise Makuch Revocable Trust (hereinafter "the Trust") is a trust established by Louise Makuch, mother of Anna Gil and former employee of Gilmart, Inc., used solely for the purpose of shielding Anna's assets from Plaintiff. The Trust is currently the beneficial owner of all of Gilmart's assets pursuant to an asset purchase agreement entered into during Gilmart's second Chapter 11 bankruptcy proceeding. As will be shown, the Trust was invalid due to Anna's forging her mother's signature on the Trust documents.

6.        Defendant Jozef Jamroz is a former employee of Gilmart, hired specifically by Anna, who conspired with Anna to transfer funds out of the reach of Plaintiff by receiving money from Anna, using that money to purchase real property, and then placing the property into a land trust owned by the Louise Makuch Revocable Trust.

7.        Defendant Father Wactaw Jamroz ("Father Jamroz") is a Catholic Priest and close friend of Anna. Father Jamroz accompanied Anna during most of her meetings with Gustafson and allegedly assisted in having his parishioners loan $577,000.00 to the Trust as part of the effort to purchase Gilmart's assets from the bankruptcy trustee. Father Jamroz has corroborated Anna's testimony that she forged her mother's signature onto the Trust documents.

8.        Defendant Byrne, Byrne & Company was one of the three petitioning creditors in Gilmart's manufactured involuntary bankruptcy filed in September of 2006. On information and belief, its Vice President, Clyde Patterson, a friend of Anna Gil's, made arrangements with the two other petitioning creditors and Anna to file the involuntary petition. Byrne was listed in the involuntary petition as being owed $31,088.00, but according to Gilmart's accounts payable ledger, as of November of 2006 Byrne was either paid in full or was not owed anything, as it was not even listed on the ledger.

9.        Defendant Lowell International Company was one of the three petitioning creditors in Gilmart's manufactured involuntary bankruptcy filed in September of 2006. On information and belief, it made arrangements with the two other petitioning creditors, as well as Anna, to file the involuntary petition.

10.        Defendant Eagle Distributors, Inc. was one of the three petitioning creditors in Gilmart's manufactured involuntary bankruptcy filed in September of 2006. On information and belief, its President, Walter Podmanski, a friend of Anna's made arrangements with the two

**B.      The Transfers**

11.      From the inception of Gilmart's existence up to and throughout 2001, Defendant Anna Gil, through her position as bookkeeper of Gilmart, upon information and belief, took excess compensation and draws from Gilmart totaling over $3.7 million. One of Gilmart's accountants claims that as early as 1994, he "discovered substantial discrepancies with the Gilmart books…and declined to prepare any tax returns for Gilmart." *Exhibit 1, Affidavit of Paul Arnold*. Upon information and belief, Anna took the draws for two purposes: the first was to avoid having to pay taxes for Gilmart, and the second was to funnel the money away from Plaintiff. Gilmart's 2001 tax return characterized an asset of "cash" that was not in any account or anywhere to be found in the amount of $3,782,471. *Exhibit 2, Gilmart, Ltd. 2001 Federal Tax Return*. However, on Gilmart's 2002 tax return, Anna was required, upon advice of tax counsel and her accountants, to list the draws as an asset on the tax return "shareholder loan" to Anna Gil and Joe Gil. *Exhibit 3, Gilmart, Ltd. 2002 Federal Tax Return*. On the 2003 tax return, the shareholder loan was again listed. Plaintiff never received any of this money, but was required by the Internal Revenue Service to pay taxes on it because the IRS declared it to be a dividend. *Exhibit 4, Gilmart, Ltd. 2003 Federal Tax Return*.

12.      In 2005, Anna withdrew funds totaling over $350,000.00 from Gilmart, which were used to pay her personal tax obligation to the Internal Revenue Service.

13.      On or around May 27, 2004 Anna transferred $50,000.00 of her personal funds to her mother, Louise Makuch.

14.      On or around June 2, 2004, Anna caused $235,000.00 to be transferred from an account in the name of Gilmart, Ltd. to Louise Makuch. *Exhibit 5, Spreadsheet of transfers from Gilmart special account to Louise Makuch Escrow Account.*

15.      On or around June 15, 2004, Anna caused an additional $100,000.00 to be transferred from an account in the name of Gilmart, Ltd. to Louise Makuch. *Exhibit 5.*

16.      During the years 2004 and 2005, Anna directed additional funds in excess of $154,000.00 from Gilmart to Ludka, Inc., which was a corporation wholly owned by Louise Makuch and who provided no services or products to Gilmart. Ludka was dissolved in 2006.

17.      On or around June 3, 2004 Louise purchased a piece of commercial property located at 8120 South Archer Avenue, Willow Springs, Illinois (hereinafter "Willow Springs Property"). Louise contributed at least $500,000.00 toward the down payment for the property. Upon information and belief, these funds were transferred from Anna to Louise from the various sources noted herein. *See Exhibit 6, Louise Makuch Escrow Account Statement, May 2004.* While the property was purchased in Makuch's name, she was simply acting as a strawman for Anna.

18.      On or around June 17, 2004, Louise transferred $200,000.00 to Jozef Jamroz, an employee of Gilmart.

19.      On or around June 21, 2004, Jozef Jamroz purchased real property located at 605 Oakwood, Willow Springs, Illinois(hereinafter "Oakwood Property"), paying $196,198.35 in *cash* at closing.

## C.      The Louise Makuch Revocable Trust is Established

20.      On July 23, 2004, Louise Makuch established the Louise Makuch Revocable Trust (hereinafter "the Trust"), naming herself as trustee and naming her son and daughters as beneficiaries upon her death. *Exhibit 7, Louise Makuch Revocable Trust.* The trust expressly states that it is Louise Makuch's intent to deprive Joseph Gil of any interest in property. The trust specifically states that:

> The trustee is directed to take any and all actions necessary to ensure that any trust assets that are to pass to Anna be protected from ever benefiting Joe Gil, including but not limited to the following directions: (i) the transfer at my death of real or personal property to the trustee for the benefit of Anna is on the express condition that the property or any funds realized therefrom be and always remain non-marital assets. In the event the real or personal property referred to herein or any funds derived there from ever become marital assets, I direct the trustee to take any and all actions necessary to transfer the property to and for the benefit of my granddaughter, Annette Gil…

21.      In a deposition taken during Anna's dispute with Gustafson over his fees for acting as Trustee, Anna testified that she forged her mother's signature onto the Trust documents. *Exhibit 8, Deposition Transcript of Anna Gil.*

22.      Anna's close friend, Father Jamroz, who is a Catholic priest and accompanied Anna on all of her meetings with Gustafson, additionally testified that Anna forged her mother's signature onto the Trust.

23.      On August 12, 2004, Louise, as Trustee of the Trust, went right to work by transferring ownership of the Willow Springs Property to a land trust, of which the beneficial interest is held by the Louise Makuch Revocable Trust.

24.      On or around June 21, 2004, Jozef Jamroz transferred ownership of the Oakwood Property to a land trust, of which the beneficial interest is held by the Louise Makuch Revocable Trust.

25.       On November 2, 2004, Anna, who was then represented by Steven Gustafson and his law firm, James, Gustafson and Thompson, filed for divorce from Plaintiff, while Gustafson was also representing Gilmart and advising Anna Gil and Louise Makuch in regard to the activities of the Trust. That same day, Anna filed a complaint for injunctive relief against Plaintiff, arguing that Plaintiff had mismanaged Gilmart, converted corporate property, breached his fiduciary duties to Anna Gil, and had interfered with contractual and business relationships. In January, 2005, Gustafson and his firm were disqualified from further representing Gilmart because of his conflict in representing Anna in her divorce.

26.       Throughout the divorce proceeding, Anna paid her personal attorneys fees incurred in the divorce litigation from Gilmart funds.

27.       On August 1, 2005 Anna allegedly sent notice to Plaintiff Joseph Gil and herself regarding the following meetings: (1) Notice of a Special Meeting of the Board of Directors on August 25, 2005; (2) Notice of Annual Meeting of the Board of Directors on August 26, 2005; and (3) Notice of Annual Meeting of Shareholders on August 26, 2005. The effect of the Special Meeting of the Board of Directors was to alter Gilmart's bylaws in two ways: first, the number of directors was reduced from two to one, and second, a change in the quorum requirement for shareholder meetings from a majority to "a majority of shareholders present." In addition, according to the minutes, Joseph Gil was relived of his duties as Director of Gilmart. *Exhibit 9, Notice of Special Meeting of Board of Directors, Notice of the Annual Meeting of Shareholders, and Minutes of the Special Meeting of Board of Directors of Gilmart, Ltd.* Plaintiff never received notice of any of these meetings, and upon information and belief, notice was never actually sent to him.

### D.       Gilmart Files Chapter 11 and Gustafson Becomes Successor Trustee of the Louise Makuch Revocable Trust

28.      On January 20, 2006, Anna called a special board meeting for Gilmart, Ltd. At that board meeting, the board adopted a resolution allowing Gilmart to file a Chapter 11 bankruptcy, authorizing Anna Gil to execute and deliver all documents necessary for the filing of the Chapter 11 and authorizing Anna Gil to perform all acts necessary for the bankruptcy, including to make appearances and representations on behalf of Gilmart to the Bankruptcy Court. Plaintiff never received notice of the meeting as required under Illinois law and never waived the notice requirement. *Exhibit 10, Statement Regarding Authority to Sign and File Petition.*

29.      When the voluntary Chapter 11 was filed in January of 2006, Gustafson served as a liason between Anna and her bankruptcy attorney. Gustafson has verified that at all times, only Anna and her brother Andrew has access to Gilmart's books, records, and other financial documents. *Exhibit 11, Affidavit of Steven D. Gustafson, p.2.*

30.      Gilmart's Chapter 11 proceeding was eventually dismissed by the Bankruptcy Court. Moreover, the court awarded Rule 9011 sanctions to Plaintiff Joseph Gil and against Anna because the filing of the Chapter 11 was not based on a reasonable investigation of the facts of the case and that the Chapter 11 was filed for an improper purpose, which was to harm Joseph Gil.

31.      Louise Makuch passed away on August 29, 2006, and shortly thereafter Steven D. Gustafson became Successor Trustee pursuant to the terms of the Trust, and he received over $243,000.00 on behalf of the Trust, which represented the liquidation of Louise Makuch's bank accounts. *Exhibit 11, Affidavit of Steven D. Gustafson, p.1.*

**E.      Gilmart Manufactures Involuntary Bankruptcy**

32.      After Gilmart's first Chapter 11 was dismissed, Anna realized that she could not bring Gilmart under the jurisdiction of the bankruptcy court on her own, because Plaintiff still

33.     The case was eventually converted to one under Chapter 11, and a trustee was appointed at the request of Plaintiff, in part, due to Anna Gil's conduct in that she had engaged in gross mismanagement of the affairs of the Debtor by transferring assets of the estate to herself and to those related to her without consideration, by paying for her personal expenses with corporate funds, by representing to her creditors and to Joe Gil, an equity security holder, that expenses had been incurred when in fact they had not, and for enriching herself to the detriment of the Debtors creditors and to her fellow equity security holder

34.     On August 7, 2007, the Chapter 11 trustee sold substantially all of Gilmart's assets to the Louise Makuch Revocable Trust through an Asset Purchase Agreement.

35.     To help finance the purchase of Gilmart from the Trustee, Father Jamroz allegedly raised $500,000 from his parishioners by requesting that they loan money to Anna Gil and Gilmart, knowing full well that the Trust was a sham and knowing full well that Plaintiff was to lose his interest in Gilmart as a result of the sale.

36.    Thus, the final effect of the bankruptcy was that Anna, through the Trust, purchased Plaintiff Joseph Gil's interest in Gilmart for a significantly reduced value. This value did not take into account the large transfers from Gilmart to Anna in the years preceding the bankruptcy which Plaintiff was entitled to as part of his divorce.

## The Outline of the Conspiracy and Enterprise

37.    Anna Gil, Gilmart, Ltd., Josef Jamroz, Father Jamroz, Byrne, Byrne & Company, Lowell International Corporation, and Eagle Distributors, Inc. formed an association-in-fact enterprise, that was engaged in and the activities of which affected interstate commerce, and thereafter conducted and participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity, by the sale, liquidation and hypothecation of a substantial part of Gilmart's and Anna's assets, by the fraudulent transfer of Anna's assets to third parties and to the Louise Makuch Revocable Trust, and by the filing of the first Chapter 11 bankruptcy petition and manufacture of the involuntary bankruptcy petition, all as part of their scheme to hinder, delay and defraud Joseph Gil, and avoid the seizure of the property, cash and other assets owned by Anna if Joseph Gil obtained a judgment against Anna individually.

38.    In operating and managing the enterprise, Anna made the decisions as to which and when assets would be sold, liquidated, hypothecated or transferred and how the proceeds from those activities would be fraudulently concealed and otherwise directed the enterprise's affairs. Anna additionally participated in the operation and management of the enterprise by telling Louise Makuch to form the Trust and forging her signature thereto so that Anna could transfer her assets into the Trust, making Anna's assets hard to trace.

39.      Anna Gil, Gilmart, Ltd., Josef Jamroz, Father Jamroz, Byrne, Byrne & Company, Lowell International Corporation, and Eagle Distributors, Inc. conspired to violate 18 U.S.C. § 1962(c), and in particular, conspired to conduct or participate, directly or indirectly, in the affairs of the enterprise through a pattern of racketeering activity, and further agreed that some members of said conspiracy would commit at least two predicate acts in actually conducting or participating in the conduct of the Enterprise's affairs, all as part of their scheme to hinder, delay and defraud Joseph Gil, and avoid the seizure of Anna's assets by Plaintiff in the event he obtained a judgment against Anna as a result of suing her.

## COUNT I
## Declaratory Judgment That
## the Louise Makuch Revocable Trust Is Not a Trust

40.      Plaintiff adopts paragraphs 1 through 39 as Paragraph 40 of Count I.

41.      In order for a valid trust to be formed, a Trust must have each of the following elements:

    1. A manifestation of intention of the settlor to create a trust;
    2. Trust property;
    3. A lawful trust purpose; and
    4. At least one identifiable beneficiary

42.      Both Anna and Father Jamroz testified under oath that Louise Makuch, the settlor of the Trust, never reviewed the Trust documents and that Anna forged her mother's signature onto the Trust.

43.      Since Louise Makuch did not manifest an intent to create a trust through execution of the Trust documents, a valid trust was not formed. Additionally, the Trust was formed for the explicit purpose of shielding assets from Plaintiff, who was a creditor of Anna at the time of the Trust formation. Shielding assets from existing creditors is not a valid trust purpose.

44.     Because a valid trust was never formed, any property transferred into the Trust's name should be declared to be property subject to turnover to Plaintiff.

WHERFORE, the Plaintiff, Joseph Gil, respectfully prays for the following:

   a.   That this Court declare that the Louise Makuch Revocable Trust is not a valid trust;

   b.   That the separate existence of the Louise Makuch Revocable Trust be disregarded in its entirety; and

   c.   That any and all assets held by the Louise Makuch Revocable Trust be subject to turnover to Plaintiff; and

   d.   For such other relief that the court deems proper and just.

### COUNT II
### Declaratory Judgment, Plead In The Alternative, That the Louise Makuch Revocable Trust is a Sham Trust

45.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 45 of Count II.

46.     When Anna transferred her assets into the Trust, she continued to use and receive income from the assets.

47.     After the Trust was formed, there was no restriction on Anna's use of the property that had been transferred into the Trust, and, at all times, Anna received the income that the Trust was supposed to receive.

48.     Anna continued to have unrestricted use and control over the Trust property, without any limitations being imposed by Louise Makuch as Trustee, and Steven Gustafson as Successor Trustee.

49.     As a result of Anna's actions in regard to the Trust property, the Trust should be rejected as a sham trust, and should not be recognized as a valid trust.

WHERFORE, the Plaintiff, Joseph Gil, respectfully prays for the following:

a.      That this Court declare that the Louise Makuch Revocable Trust be disregarded as a sham and not recognized as a trust;

b.      That the separate existence of the Louise Makuch Revocable Trust be disregarded in its entirety; and

c.      That any and all assets held by the Louise Makuch Revocable Trust be subject to turnover to Plaintiff; and

d.      For such other relief that the court deems proper and just.

## COUNT III
## Avoidance of Fraudulent Transfers of Cash from Anna Gil and Gilmart to Louise Makuch Pursuant to 740 ILCS §§160/5 160/6 and 160/9(b)

50.      Plaintiff adopts paragraphs 1 through 39, as Paragraph 50 of Count III.

51.      The transfers of cash by Anna Gil from her personal account and from Gilmart's corporate account to Louise Makuch  and into the Trust were made:

(a)      with the actual intent to hinder, delay or defraud Plaintiff; or

(b)      without receiving a reasonably equivalent value in exchange for the transfer at time when:

(1)      Anna Gil and Gilmart were insolvent, or became insolvent as a result of the transfer; or

(2)      Anna Gil and Gilmart were engaged or were about to engage in a business or transaction for which their remaining assets were an unreasonably small capital in relation to such business or transaction; or

(3)      Anna Gil and Gilmart intended to incur or believed that they would incur debts beyond their ability to pay as they became due.

52.        The Transfers of cash by Anna Gil from her personal account and from Gilmart's corporate account to Louise Makuch and then into the Trust constitute Fraudulent Transfers within the meaning of 740 ILCS 160/5 and 160/6 and should be avoided.

53.        Pursuant to 740 ILCS 160/9(b), Plaintiff is entitled to recover the present value of the amount of the transfers from the Defendants.

WHERFORE, the Plaintiff, Joseph Gil, respectfully prays for the following:

The entry of an order avoiding the transfers of cash from Anna Gil's personal account and Gilmart's corporate account to Louise Makuch and the Trust; the entry of an order allowing Plaintiff to recover from Defendants, jointly and severally, the value of the asset transferred;  and for such other relief that the Court deems proper and just.

## COUNT IV
### Avoidance of Fraudulent Transfer of Archer Avenue Property and Oakwood Property Pursuant to 740 ILCS §§160/5 160/6 and 160/9(b)

54.        Plaintiff adopts paragraphs 1 through 39 as Paragraph 54 of Count IV.

55.        On or around June 3, 2004 Louise Makuch purchased the Archer Avenue property, upon information and belief, from the funds given to her by Anna Gil. That property was placed into a land trust, of which the beneficial interest is owned by the Louise Makuch Revocable Trust.

56.        On or around June 17, 2004, Louise Makuch transferred $200,000.00 to Jozef Jamroz, and upon information and belief, those funds were funds given to her by Anna Gil.

57.        On or around June 21, 2004, Jozef Jamroz purchased the Oakwood Property, upon information and belief, from the funds given to him by Louise Makuch.  That same day, the property was transferred into a land trust, of which the beneficial interest is held by the Louise Makuch Revocable Trust.

58.      The Louise Makuch Revocable Trust owns the beneficial interest in both properties, of which Anna Gil is the beneficiary.

59.      The transfer of both properties into the land trusts were made:

(a)      with the actual intent to hinder, delay or defraud Plaintiff; or

(b)      without receiving a reasonably equivalent value in exchange for the transfer at time when:

(1)      Anna Gil and Gilmart were insolvent, or became insolvent as a result of the transfer; or

(2)      Anna Gil and Gilmart were engaged or was about to engage in a business or transaction for which their remaining assets were an unreasonably small capital in relation to such business or transaction; or

(3)      Anna Gil and Gilmart intended to incur or believed that they would incur debts beyond their ability to pay as they became due.

60.      The transfer the Archer Avenue property and the Oakwood property into the land trusts constitute a Fraudulent Transfer within the meaning of 740 ILCS 160/5 and 160/6 and should be avoided.

61.      Pursuant to 740 ILCS 160/9(b), Plaintiff is entitled to recover the present value of the amount of the Transfer from the Defendants.

62.      Pursuant to 740 ILCS 160/9(b), Plaintiff is entitled to recover the present value of the amount of the Transfer from the Defendants or from any immediate or mediate transferee of the initial transferee.

WHEREFORE, the Plaintiff, Joseph Gil, respectfully prays for the entry of an order avoiding the transfer of the Archer Avenue property and the Oakwood property into the land trust;

the entry of an order allowing Plaintiff to recover from Defendants, jointly and severally, the value of the asset transferred; and for such other relief that the Court deems proper and just.

### Count V
### Civil RICO Against Anna Gil Under Sec. 1962(b)

63.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 63 of Count V.

64.     The United States Code, Title 18, contains the following relevant provisions: § 1961 *et seq*. (The Racketeer Influenced Corrupt Organizations Act ("RICO")); § 1341 (Mail Fraud); § 152 (Concealment of Assets; False oaths and claims; bribery); § 1343 (Wire Fraud).

65.     In violation of 1962(b), Anna Gil acquired an interest or control of an enterprise through a pattern of racketeering activity, while committing, or causing others to commit, two or more of the following predicate acts, in violation of the following sections of Title 18 of the United States Code:

-       The violation of § 152(7), by knowingly and fraudulently transferring or concealing assets in contemplation of bankruptcy by, on or about May 27, 2004, transferring $50,000.00 to her mother Louise Makuch from her personal account, and between June 2, 2004 and June 15, 2004 causing to be transferred $335,000.00 from Gilmart's account to Louise Makuch. The funds were used to purchase the Archer Avenue and Oakwood properties, which were then transferred into land trusts held by the Louise Makuch Revocable Trust.

-       The violation of § 152(7), by knowingly and fraudulently transferring or concealing assets in contemplation of bankruptcy by assisting in the formation of the Louise Makuch Revocable Trust (the "Trust"). The Trust was executed by Louise Makuch at the direction of Anna Gil shortly before the filing of the Gil divorce petition and in contemplation of the Gilmart, Inc. bankruptcy.

-       The violation of 152(7), by knowingly and fraudulently transferring or concealing assets in contemplation of bankruptcy by transferring over $3.7 million of Gilmart's funds from Gilmart to unknown accounts.

-       The violation of 152(7) by arranging with three creditors to have an involuntary bankruptcy petition filed against Gilmart, Ltd

-       The violation of 152(8) in that after the filing of the bankruptcy petition filed by Gilmart and in the involuntary case filed against Gilmart, Anna Gil knowingly and fraudulently made false entries in the schedules, the statement of financial affairs and the monthly operating reports which related to the property or financial affairs of Gilmart;

-       The violation of 152(9) in that after the filing of the involuntary bankruptcy case against Gilmart,  Anna Gil knowingly and fraudulently withheld information about all the financial affairs of Gilmart from Alex Moglia, the appointed trustee, relating to the property or financial affairs of a debtor,

-       The violation of § 1341, on or about January 26, 2006, by causing another to mail the Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates to the persons and entities named within the certificate of service.

-       The violation of § 1343, on or about January 26, 2006, by causing another to electronically file the Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates to the persons and entities named within the certificate of service.

-       The violation of § 1341 by causing another to mail a 2002 U.S. Tax Return for Gilmart, Inc. in an attempt to cover up money stolen from Gilmart by characterizing the asset "cash" on Gilmart's 2001 tax return as a shareholder loan.

-       The violation of § 1343 by causing money to be electronically transferred from Gilmart's bank account to her personal bank account and by causing money to be electronically transferred from her personal bank account and Gilmart's bank account to Louise Makuch's bank account and Ludka, Inc.'s bank account.

-       The violation of § 1341 by causing checks to be mailed to Louise Makuch, Ludka, Inc., Jozef Jamroz, and to Steven Gustafson as Trustee to deposit into the Trust.

### Count VI
### Civil RICO Against Anna Gil Under Sec. 1962(c)

66.     Plaintiff adopts paragraphs 1 through 39 of this Complaint as Paragraph 66 of Count VI.

67.     The United States Code, Title 18, contains the following relevant provisions: § 1961 *et seq*. (The Racketeer Influenced Corrupt Organizations Act ("RICO")); § 1341 (Mail Fraud); § 152 (Concealment of Assets; False oaths and claims; bribery); § 1343 (Wire Fraud).

68.     In violation of § 1962(c), Anna Gil conducted and participated in the operation and management of, directly or indirectly, the conduct of the Enterprises' affairs through a pattern of racketeering activity, committing, or causing others to commit, two or more of the following predicate acts, in violation of the following sections of title 18 of the United States Code:

-       The violation of § 152(7), by knowingly and fraudulently transferring or concealing assets in contemplation of bankruptcy by, on or about May 27, 2004, transferring $50,000.00 to her mother Louise Makuch from her personal account, and between June 2, 2004 and June 15, 2004 causing to be transferred $335,000.00 from Gilmart's account to Louise Makuch. The funds were used to purchase the Archer Avenue and Oakwood properties, which were then transferred into land trusts held by the Louise Makuch Revocable Trust.

-       The violation of § 152(7), by knowingly and fraudulently transferring or concealing assets in contemplation of bankruptcy by assisting in the formation of the Louise Makuch Revocable Trust (the "Trust"). The Trust was executed by Louise Makuch at the direction of Anna Gil shortly before the filing of the Gil divorce petition and in contemplation of the Gilmart, Inc. bankruptcy.

-       The violation of 152(7), by knowingly and fraudulently transferring or concealing assets in contemplation of bankruptcy by transferring over $3.7 of Gilmart's funds from Gilmart to unknown accounts.

-       The violation of 152(7) by arranging with three creditors to have an involuntary bankruptcy petition filed against Gilmart, Ltd.

-       The violation of 152(8) in that after the filing of the bankruptcy petition filed by Gilmart and in the involuntary case filed against Gilmart, Anna Gil knowingly and fraudulently made false entries in the schedules, the statement of financial affairs and the monthly operating reports which related to the property or financial affairs of Gilmart;

-       The violation of 152(9) in that after the filing of the involuntary bankruptcy case against Gilmart,  Anna Gil knowingly and fraudulently withheld information about all the financial affairs of Gilmart from Alex Moglia, the appointed trustee, relating to the property or financial affairs of a debtor,

-       The violation of § 1341, on or about January 26, 2006, by causing another to mail the Notice of Commencement of Case Under Chapter 11 of the Bankruptcy Code, Meeting of Creditors, and Fixing of Dates to the persons and entities named within the certificate of service.

-       The violation of § 1343, on or about January 26, 2006, by causing another to electronically file the Notice of Commencement of Case Under Chapter 11 of the Bankruptcy

Code, Meeting of Creditors, and Fixing of Dates to the persons and entities named within the certificate of service.

-        The violation of § 1341 by causing another to mail a 2002 U.S. Tax Return for Gilmart, Inc. in an attempt to cover up money stolen from Gilmart by characterizing the asset "cash" on Gilmart's 2001 tax return as a shareholder loan.

-        The violation of § 1343 by causing money to be electronically transferred from Gilmart's bank account to her personal bank account and by causing money to be electronically transferred from her personal bank account and Gilmart's bank account to Louise Makuch's bank account and Ludka, Inc.'s bank account.

-        The violation of § 1341 by causing checks to be mailed to Louise Makuch, Ludka, Inc., Jozef Jamroz, and to Steven Gustafson as Trustee to deposit into the Trust.

69.      As a result of Anna Gil's aforesaid conduct, Plaintiff has been injured by his inability to collect the amounts owed to him.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.        The entry of a judgment against Anna Gil, jointly and severally, for treble the amount of damages suffered by reason of the failure to pay Joseph Gil money owed to him;

b.        The costs of this litigation, plus interest and attorneys fees: and

c.        For such other relief that the Court deems meet.

### Count VII
### Civil RICO Against Anna Gil Under Sec. 1962(d)

70.      Plaintiff adopts paragraphs 1 through 39 as Paragraph 70 of Count VII.

71.      In violation of § 1962(d), Anna Gil conspired with The Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Father Jamorz, Byrne, Byrne & Company, Lowell International Company, and Eagle Distributors, Inc. to violate § 1962(b) and 1962(c), of the

72.     Anna Gil further agreed that Anna Gil, The Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Father Jamroz, Byrne, Byrne & Company, Lowell International Company, and Eagle Distributors, Inc. would commit at least two predicate acts in furtherance of these goals, including those committed by each of them as set for the herein.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.      The entry of a judgment against Anna Gil, jointly and severally, for treble the amount of damages suffered by reason of the failure to pay Plaintiff;

b.      The costs of this litigation, plus interest and attorneys fees: and

c.      For such other relief that the Court deems meet.

<u>**Count VIII**</u>
<u>**Civil  RICO against Josef Jamroz – Sec.  1962(c)**</u>

73.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 73 of Count VIII.

74.     In violation of § 1962(c), Josef Jamroz ("Jamroz") conducted and participated in the operation and management of, directly or indirectly, the conduct of the Enterprise's affairs through a pattern of racketeering activity, committing, or causing others to commit, two or more of the predicate acts as s committing, or causing others to commit, two or more of the following predicate acts, in violation of sections of title 18 of the United States Code cited in paragraph 64 where applicable:

a.      Jamroz was the recipient of the transfer from Louise Makuch in the amount of $200,000.00, which represented funds transferred from Anna to Louise Makuch in an attempt to conceal those funds from the reach of Joseph Gil.

b.      Jamroz used the funds received from Louise Makuch to purchase the Oakwood Property, paying around $165,000 in cash at closing.

c.      Jamroz transferred the Oakwood Property into a land trust, the beneficial interest of which was owned by the Louise Makuch Revocable Trust.

75.      As a result of Jamroz's aforesaid conduct, Plaintiff Joseph Gil has been injured by his inability to collect the amounts owed to him.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.      The entry of a judgment against Josef Jamroz, jointly and severally, for treble the amount of damages suffered by reason of his inability to collect money owed to him;

b.      The costs of this litigation, plus interest and attorneys fees: and

c.      For such other relief that the Court deems meet.

<u>**Count IX**</u>
<u>**Civil RICO Against Josef Jamroz Under Sec. 1962(d)**</u>

76.      Plaintiff adopts paragraphs 1 through 39 as Paragraph 76 of Count IX.

77.      In violation of § 1962(d), Josef Jamroz conspired with Anna Gil, the Louise Makuch Revocable Trust, Gilmart, Ltd., Father Jamroz, Byrne, Byrne & Company, Lowell International Company, and Eagle Distributors, Inc. to violate § 1962(c), of the RICO Act.  In particular, Jamroz knew about and agreed to facilitate the scheme and maintain an interest in or control of, or to participate in the affairs of the Enterprise through a pattern of racketeering activity, in order to conceal Anna Gil's assets by those acts as set forth in paragraph 74.

78.     Jamroz further agreed that Jamroz, Anna Gil, the Louise Makuch Revocable Trust, Gilmart, Ltd., Father Jamroz, Byrne, Byrne & Company, Lowell International Company, and Eagle Distributors, Inc. would commit at least two predicate acts in furtherance of these goals, including those committed by each of them as set for the herein.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.     The entry of a judgment against Josef Jamroz, jointly and severally, for treble the amount of damages suffered by his inability to collect money owed to him;

b.     The costs of this litigation, plus interest and attorneys fees: and

c.     For such other relief that the Court deems meet.

## Count X
## Civil  RICO against Father Jamroz – Sec.  1962(c)

79.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 79 of Count X.

80.     In violation of § 1962(c), Father Jamroz conducted and participated in the operation and management of, directly or indirectly, the conduct of the Enterprise's affairs through a pattern of racketeering activity, committing, or causing others to commit, two or more of the predicate acts as s committing, or causing others to commit, two or more of the following predicate acts, in violation of sections of title 18 of the United States Code cited in paragraph 64 where applicable:

a.     Father Jamroz accompanied Anna on all of her meetings with Gustafson and was intricately involved in the planning of the scheme.

b.     Father Jamroz allegedly raised $577,000.00 from his parishioners to "loan" to the Trust for the purpose of purchasing Gilmart's assets from the bankruptcy trustee, when he knew that the Trust was not valid since Anna had forged her mother's signature on the Trust documents.

81.     As a result of Father Jamroz's aforesaid conduct, Plaintiff Joseph Gil has been injured by his inability to collect the amounts owed to him.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.      The entry of a judgment against Father Jamroz, jointly and severally, for treble the amount of damages suffered by reason of his inability to collect money owed to him;

b.      The costs of this litigation, plus interest and attorneys fees: and

c.      For such other relief that the Court deems meet.

**Count XI**
**Civil RICO Against Father Jamroz Under Sec. 1962(d)**

82.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 82 of Count XI.

83.     In violation of § 1962(d), Father Jamroz conspired with Anna Gil, the Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Byrne, Byrne & Company, Lowell International Company, and Eagle Distributors, Inc. to violate § 1962(c), of the RICO Act.  In particular, Jamroz knew about and agreed to facilitate the scheme and maintain an interest in or control of, or to participate in the affairs of the Enterprise through a pattern of racketeering activity, in order to conceal Anna Gil's assets by those acts as set forth in paragraph 80.

84.     Father Jamroz further agreed that he, Anna Gil, the Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Byrne, Byrne & Company, Lowell International Company, and Eagle Distributors, Inc. would commit at least two predicate acts in furtherance of these goals, including those committed by each of them as set for the herein.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.      The entry of a judgment against Father Jamroz, jointly and severally, for treble the amount of damages suffered by his inability to collect money owed to him;

b.      The costs of this litigation, plus interest and attorneys fees: and

c.      For such other relief that the Court deems meet.

## Count XII
## Civil  RICO against Byrne, Byrne & Company – Sec.  1962(c)

85.      Plaintiff adopts paragraphs 1 through 39 as Paragraph 85 of Count XII.

86.      In violation of § 1962(c), Byrne, Byrne & Company (hereinafter "Byrne") conducted and participated in the operation and management of, directly or indirectly, the conduct of the Enterprise's affairs through a pattern of racketeering activity, committing, or causing others to commit, two or more of the predicate acts as committing, or causing others to commit, two or more of the following predicate acts, in violation of sections of title 18 of the United States Code cited in paragraph 64 where applicable:

a.      Byrne, being fully aware of Anna's intentions in regard to Gilmart, agreed with Anna and the two other petitioning creditors that they would file an involuntary bankruptcy petition under Title 11.

b.      Byrne signed onto Gilmart's involuntary bankruptcy petition when, upon information and belief, they were not owed the amount listed on the Petition by Gilmart and in which they agreed to be repaid shortly after the filing the pre-petition amounts owed in violation of provisions of the U.S. Bankruptcy Code relating to payments to pre-petition creditors.

87.      As a result of Byrne's aforesaid conduct, Plaintiff Joseph Gil has been injured by his inability to collect the amounts owed to him.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.      The entry of a judgment against Byrne, Byrne & Company, jointly and severally, for treble the amount of damages suffered by reason of his inability to collect money owed to him;

b.      The costs of this litigation, plus interest and attorneys fees: and

c.      For such other relief that the Court deems meet.

30

## Count XIII
## Civil RICO Against Byrne, Byrne & Company Under Sec. 1962(d)

88.    Plaintiff adopts paragraphs 1 through 39 as Paragraph 88 of Count XIII.

89.    In violation of § 1962(d), Byrne, Byrne & Company conspired with Anna Gil, The Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Father Jamroz, Lowell International Company, and Eagle Distributors, Inc. to violate § 1962(c), of the RICO Act.  In particular, Byrne knew about and agreed to facilitate the scheme and maintain an interest in or control of, or to participate in the affairs of the Enterprise through a pattern of racketeering activity, in order to conceal Anna Gil's assets by those acts as set forth in paragraph 86.

90.    Byrne further agreed that it, Anna Gil, the Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Father Jamroz, Lowell International Company, and Eagle Distributors, Inc. would commit at least two predicate acts in furtherance of these goals, including those committed by each of them as set for the herein.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.    The entry of a judgment against Byrne, Byrne & Company, jointly and severally, for treble the amount of damages suffered by his inability to collect money owed to him;

b.    The costs of this litigation, plus interest and attorneys fees: and

c.    For such other relief that the Court deems meet.

## Count XIV
## Civil  RICO against Lowell International Corporation – Sec.  1962(c)

91.    Plaintiff adopts paragraphs 1 through 39 as Paragraph 91 of Count XIV.

92.    In violation of § 1962(c), Lowell International Corporation (hereinafter "Lowell") conducted and participated in the operation and management of, directly or indirectly, the conduct of the Enterprise's affairs through a pattern of racketeering activity, committing, or

a.      Lowell, being fully aware of Anna's intentions with Gilmart agreed with Anna and the two other petitioning creditors that they would file an involuntary bankruptcy petition under Title 11.

b.      Lowell signed onto Gilmart's involuntary bankruptcy petition when, upon information and belief, they had conspired with Anna to be repaid shortly after the filing the pre-petition amounts owed in violation of provisions of the U.S. Bankruptcy Code relating to payments to pre-petition creditors.

93.      As a result of Lowell's aforesaid conduct, Plaintiff Joseph Gil has been injured by his inability to collect the amounts owed to him.

WHEREFORE, the Plaintiff, Joseph Gil, prays for the following relief:

a.      The entry of a judgment against Lowell International Corporation, jointly and severally, for treble the amount of damages suffered by reason of his inability to collect money owed to him;

b.      The costs of this litigation, plus interest and attorneys fees: and

c.      For such other relief that the Court deems meet.

### Count XV
### Civil RICO Against Lowell International Corporation Under Sec. 1962(d)

94.      Plaintiff adopts paragraphs 1 through 39 as Paragraph 94 of Count XV.

95.      In violation of § 1962(d), Lowell conspired with Anna Gil, The Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Father Jamroz, Byrne, Byrne & Company, and Eagle Distributors, Inc. to violate § 1962(c), of the RICO Act.  In particular, Lowell knew about and agreed to facilitate the scheme and maintain an interest in or control of, or to participate in

96.     Lowell further agreed that it, Anna Gil, the Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Father Jamroz, Byrne, Byrne & Company, and Eagle Distributors, Inc. would commit at least two predicate acts in furtherance of these goals, including those committed by each of them as set for the herein.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.      The entry of a judgment against Lowell International Corporation, jointly and severally, for treble the amount of damages suffered by his inability to collect money owed to him;

b.      The costs of this litigation, plus interest and attorneys fees: and

c.      For such other relief that the Court deems meet.

### Count XVI
### Civil  RICO against Eagle Distributors, Inc. – Sec.  1962(c)

97.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 97 of Count XVI.

98.     In violation of § 1962(c), Eagle Distributors, Inc. (hereinafter "Eagle")conducted and participated in the operation and management of, directly or indirectly, the conduct of the Enterprise's affairs through a pattern of racketeering activity, committing, or causing others to commit, two or more of the predicate acts and committing, or causing others to commit, two or more of the following predicate acts, in violation of sections of title 18 of the United States Code cited in paragraph 64 where applicable:

a.       Eagle, being fully aware of Anna's intentions with Gilmart agreed with Anna and the two other petitioning creditors that they would file an involuntary bankruptcy petition under Title 11.

33

b.     Eagle signed onto Gilmart's involuntary bankruptcy petition when, upon information and belief, they had conspired with Anna to be repaid shortly after the filing the pre-petition amounts owed in violation of provisions of the U.S. Bankruptcy Code relating to payments to pre-petition creditors.

99.     As a result of Eagle's aforesaid conduct, Plaintiff Joseph Gil has been injured by his inability to collect the amounts owed to him.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.     The entry of a judgment against Eagle Distributors, Inc., jointly and severally, for treble the amount of damages suffered by reason of his inability to collect money owed to him;

b.     The costs of this litigation, plus interest and attorneys fees: and

c.     For such other relief that the Court deems meet.

### Count XVII
### Civil RICO Against Eagle Distributors, Inc. Under Sec. 1962(d)

100.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 100 of Count XVII.

101.     In violation of § 1962(d), Eagle conspired with Anna Gil, The Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Father Jamroz, Byrne, Byrne & Company, and Lowell International Company to violate § 1962(c), of the RICO Act.  In particular, Eagle knew about and agreed to facilitate the scheme and maintain an interest in or control of, or to participate in the affairs of the Enterprise through a pattern of racketeering activity, in order to conceal Anna Gil's assets by those acts as set forth in paragraph 98.

102.     Eagle further agreed that it, Anna Gil, the Louise Makuch Revocable Trust, Gilmart, Ltd., Josef Jamroz, Father Jamroz, Byrne, Byrne & Company, and Lowell International Company would commit at least two predicate acts in furtherance of these goals, including those committed by each of them as set for the herein.

**WHEREFORE,** the Plaintiff, Joseph Gil, prays for the following relief:

a.      The entry of a judgment against Eagle Distributors, Inc., jointly and severally, for treble the amount of damages suffered by his inability to collect money owed to him;

b.      The costs of this litigation, plus interest and attorneys fees: and

c.      For such other relief that the Court deems meet.

## Count XVIII
## Dissipation of Marital Assets

103.      Plaintiff adopts paragraphs 1 through 39 as Paragraph 103 of Count XVIII.

104.      Plaintiff and Anna Gil entered into a Marital Settlement Agreement (the "MSA") which was attached and made a part of their Divorce Decree in Case 2004 D 2475 in DuPage County, Illinois and dated May 31, 2007 (the "Divorce Case").

105.      Article X of the MSA titled "Reserved Claims" specifically reserved "All claims of either party relating to Gilmart Ltd." and "All claims of dissipation by either party".

106.      On May 17, 2007, Plaintiff's attorneys filed a "Notice of Intent to Claim Dissipation" pursuant to Section 503 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/503) (the "Notice").

107.      The Notice stated that in approximately 2000, an irretrievable breakdown of the marriage occurred.

108.      The Notice further stated that Plaintiff and Anna Gil engaged in divorce negotiations and lived separate and apart since 2000.

109.      On November 2, 2004,  Anna, filed a Petition for Dissolution of Marriage. On December 7, 2004, Plaintiff, filed a Counter-Petition for Dissolution of Marriage.

110.      The Notice alleges that Anna committed the following acts of dissipation subsequent to the irreconcilable breakdown of the marriage between the parties and without the

35

a.      $635,000 of the salary and officer compensation Anna Gil paid herself from

Gilmart, Ltd from 2000 to 2004 is missing.  Anna paid herself a total of $1,700,000

during this time, but only deposited $1,064,387 into her bank account. Joe Gil cannot

determine the amount of taxes withheld from said salaries from the records produced

herein;

b.      Anna took $2,523,038 in shareholder loans from Gilmart, Ltd. in 2002 for which

there has been no accounting;

c.      Anna gave $335,000 in marital funds to her mother, Louise Makuch, in June

2004;

d.      Anna took $266,085 from Gilmart, Ltd. in March 2005 in violation of this Court's

Order dated December 9, 2004;

e.      Anna took $262,256 from Gilmart, Ltd. in October, November and December

2006 in violation of this Court's Order dated December 9, 2004;

 f.      Anna paid over $200,000 in  living expenses for her parents, brother and Josef

Jamroz from 2000 through August 2006  These expenses include medical bills, health

and life insurance, legal bills and household living expenses;

g.      Anna gave $100,000 to her mother in August 2005;

h.      Anna withdrew $80,000 in cash from her Cole Taylor Bank account from January

2005 through August 2006 for which there has been no accounting;

i.      Anna caused the marital estate to pay at least $60,000 in legal fees by filing an

improper Bankruptcy Petition on behalf of Gilmart, Ltd. in January 2006.  Joe Gil

incurred $44,000 in legal fees to Roberts & Associates and $16,000 in legal fees to Bankruptcy Attorney Michael Davis (in addition to the $65,000 in legal fees Anna Gil must pay Michael Davis as a result of the sanctions hearing) as a result of said Bankruptcy Petition;

k.      Anna Gil gave $50,000 to her mother on May 27, 2004;

l.      Anna Gil took $26,000 more in salary in 2005 than allowed by this Court's Order dated December 9, 2004;

m.      Anna Gil bought her son, Christopher Gil, a Porsche 911 for $38,583 in January 2007;

n.      Anna Gil took an additional $7,500 from Gilmart in December 2004 in violation of this Court's Order dated December 9, 2004.

117.      Pursuant to Illinois statute and case law, the burden of proof is now placed upon Anna Gil to prove that her acts did not constitute dissipation.

118.      As part and parcel of the acts alleged herein, the identical acts of dissipation relating to the scheme to defraud Plaintiff represent acts of dissipation in the marital estate.

WHEREFORE, the Plaintiff requests the following relief from this Honorable Court:

a.      Anna Gil  committed acts of dissipation as set forth within this pleading;

b.      Enter an Order awarding Plaintiff his reasonable and equitable share of the dissipated funds;

c.      For reasonable attorney's fees to be paid for the cost, preparation and presentation of this matter; and

d.      For any other further relief which this Honorable Court deems just, fair and equitable.

## Count XIX
## Breach of Fiduciary Duty

119.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 119 of Count XIX.

120.     Anna used the payments and transfers from Gilmart to various defendants to divert moneys to herself which she would not have otherwise been entitled to.

121.     Anna, at all times referenced herein, as the President and bookkeeper of Gilmart, and as the only individual with access to Gilmart's books and records, owed a fiduciary duty to Gilmart and to Joseph Gil as Shareholder to act in the best interests of the corporation and its shareholders, and to give undivided loyalty to the corporation and its shareholders. These duties included, but were not limited to preserving assets and income of the corporation so that all shareholders would receive proper return on their investments.

122.     By reason of the acts alleged herein, Anna Gil breached her fiduciary duties to Gilmart and to Joseph Gil.

123.     Plaintiff has been damaged by reason of Anna's breach of fiduciary duties.

WHEREFORE, Plaintiff Joseph Gil prays for the entry of an order awarding him:

   a.  Declaring that Anna breached her fiduciary duty to creditors by failing to preserve assets and income of the corporation through various transfers to herself through third parties;

   b.  Requiring Anna to repay to Plaintiff all of the benefits she received during the periods specified herein;

   c.  Requiring Anna to pay punitive damages in an amount to be set by this Court for her breach of fiduciary duty, for attorney's fees and costs for this Complaint; and

   d.  Such other and further relief as this court deems equitable and just.

## Count XX
## Conversion and Misappropriation

124.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 124 of Count XX.

125.     As 50% shareholder and creditor of Gilmart, Plaintiff had a right to receive certain distributions and property of the corporation. Plaintiff has demanded said distributions and property on numerous occasions.

126.     As referenced herein, Anna took distributions from Gilmart funds and transferred Gilmart funds to third parties. Much of these distributions and transfers could have been used to pay Plaintiff what he was owed as shareholder and creditor.

127.     Such conversion and misappropriation occurred without the consent of Plaintiff.

128.     As a result of said conversion and misappropriation of corporate assets, Plaintiff has suffered substantial monetary damages.

WHEREFORE, Plaintiff, Joseph Gil respectfully prays for the following relief against Anna Gil:

a.   An award of compensatory damages to Plaintiff for the amount converted and misappropriated by Anna Gil;

b.   Prejudgment interest on all sums due;

c.   The costs of this action; and

d.   Such other relief as this court Deems equitable and just.

## Count XXI
## Request for Declaratory Judgment that Gilmart was an Alter Ego of Anna Gil

129.     Plaintiff adopts paragraphs 1 through 39 as Paragraph 129 of Count XXI.

130.    Anna had control over Gilmart as President and bookkeeper. Additionally, Anna was the only individual with access to Gilmart's books and records. With that power, she manipulated the books and records of the Gilmart for her benefit.

131.    Anna, as President and Bookkeeper of Gilmart, used her control of Gilmart's books and records, her authority to authorize payments, her authority to characterize expenses and her authority to allocate resources to benefit herself.

132.    The total control exercised by Anna was, at all times, used to further her own personal interest.

133.    At all times, Anna engaged in the following acts as supported by the allegations stated in prior paragraphs:

-Anna failed to observe the accounting principles required by tax laws by characterizing expenses for her own benefit without any backup or support resulting in transfers to herself of assets and money.

-Anna exercised sole control over decisions relating to the assets of Gilmart in regard to payments to third parties, characterization of expenses, the disbursement of benefits, the allocation of Gilmart's resources, and all decisions relating to the financial condition of Gilmart.

-Anna used her exclusive control to transfer assets to herself and to third parties which were paid for by Gilmart, and therefore, Plaintiff, pay herself wages and give herself loans which were unjustified, and grant herself various other benefits.

-Anna continually preferred her own interests to the creditors and shareholders through the transfer of assets to herself and to third parties;

134.    The acts of Anna were unjust and wrongful and represent a fraud as to Plaintiff, a creditor and shareholder, to whom Anna owed a duty to not prefer herself over Gilmart's creditors and shareholders, and to make sure that creditors and shareholders got paid instead of herself. In addition, Anna had a duty to run Gilmart's business according to normal business practices, providing backup and justification for her various acts according to applicable governing rules, regulations and statutes.

135.    But for the acts of Anna described herein, Gilmart would have sufficient assets to pay creditors and shareholders instead of Anna. As a result, Plaintiff, as a creditor and shareholder has been harmed as a direct result of Anna preferring her own interests above other shareholders and creditors.

WHEREFORE, the Plaintiff, Joseph Gil, prays that this Court enter an order:

    a.  Declaring that Anan used Gilmart's corporate status as her alter ego,  through her transfer of assets for her own enrichment and taking distributions that were not ratified;

    b.  Requiring Anna to pay to Plaintiff all amounts that would be due and owing him had Anna not used Gilmart as an alter ego;

    c.  Require Anna to pay punitive damages in an amount to be set by this Court for the perpetration of her scheme, for attorney's fees and costs for this complaint; and

    d.  For such other and further relief that the court deems equitable and just.

Respectfully submitted,

Joseph Gil


By: /s/ Michael J. Davis
       One of his attorneys

Michael J. Davis (#6197896)
Joshua D. Greene (#6292914)
Springer, Brown, Covey, Gaertner & Davis, LLC
Wheaton Executive Center
400 S. County Farm Road, Suite 330
Wheaton, IL  60187
(630) 510-0000
(630) 510-0004 fax